UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT PENNSYLVANIA

| | |
|---|---|
| PHILLIP E. MOSELEY<br>259 Link RD<br>Oley, PA 19547<br><br>PLAINTIFF,<br><br>v.<br><br>TARGET CORPORATION d/b/a TARGET<br>1000 Nicollet Mall<br>Minneapolis, Minnesota, 55403<br><br>DEFENDANT. | : <br>:<br>: CIVIL ACTION<br>:<br>: No. _____<br>:<br>:<br>:<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## CIVIL ACTION COMPLAINT

Plaintiff, Phil Moseley (hereinafter referred to as "Plaintiff" unless indicated otherwise) hereby complains as follows against Target Corporation d/b/a Target (hereinafter referred to as "Defendant" or "Target"), and avers as follows:

## INTRODUCTION

1. Plaintiff initiates the instant action to redress violations by Defendant of the Family and Medical Leave Act ("FMLA" - 29 U.S.C. § 2601) and the Americans with Disabilities Act, as amended ("ADA") 42 U.S.C. § 12101 *et seq*., As a result of Defendant's unlawful actions, Plaintiff has suffered the damages as set forth herein.[1]

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and

---

[1] Upon the exhaustion of his administrative remedies, Plaintiff will amend his Complaint to include allegations for discrimination, retaliation, failure to accommodate, and hostile work environment under the Pennsylvania Human Relations Act ("PHRA") 43 P.S. § 951 *et. seq.*

seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

## **PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption. At all relevant times herein, Plaintiff was employed with Defendant.

7. Defendant is a national corporation, which operates high-end discount retail stores in the United States, including Pennsylvania.

8. Plaintiff, specifically, worked at Target Store #1222 located at 2769 Paper Mill Road, Wyomissing, PA 19610.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

**Plaintiff's Employment Background with Target**

11. Plaintiff was a loyal employee of Defendant for approximately twenty-three (23) years, from on or about December 16, 1997, up until his illegal termination on or about December 17, 2020.

12. Throughout Plaintiff's employment, he received a series of promotions, ultimately serving as a Senior Team Lead, a position he held at the time of his termination.

13. Plaintiff was highly regarded by his colleagues, who have indicated he was an amazing worker and an exceptional leader.

14. The team Plaintiff supervised enjoyed working with him and became upset when his employment was terminated.

15. Impressively, Plaintiff **did not receive any discipline whatsoever** for the first more than (20) years of his employment and the two (2) instances of discipline he did receive, as described below, were flagrantly discriminatory and retaliatory.

**Plaintiff's Disabilities/Serious Health Conditions**

16. Plaintiff suffers from a variety of disabilities and serious health conditions, namely anxiety, panic disorder, obsessive compulsive disorder, and depression.

17. In or around January 2017 up until around July of 2017, Plaintiff was committed to Haven Mental Hospital in Reading, PA, where he treated his OCD, anxiety, panic disorder, and depression.

18. Apart from being committed in 2017, Plaintiff has regularly treated his OCD, anxiety, panic disorder, and/or depression, meeting with a therapist and taking prescribed medication.

19. Despite his disabilities/serious health conditions, Plaintiff was qualified to perform the essential functions of his various position(s) at Defendant, as demonstrated by this two (2) decades of employment, glowing references from his colleagues, sterling performance reviews, and extraordinary (*i.e.* non-existent) disciplinary history.

**Discriminatory/Retaliatory Treatment Endured by Plaintiff**

20. Regrettably, Plaintiff was subjected to discriminatory treatment based on his disabilities/serious health conditions by Jeff Hefner, the Sales Floor/Logistics Executive (hereinafter "Logistics Executive Hefner") and Chris Eberhardt, the Store Director/Store Team Leader (hereinafter "Store Director Eberhardt"), creating a hostile work environment and ultimately causing his termination.

21. When Plaintiff was out on his 2017 leave, Kristen Wise, a fellow Team Lead, heard Logistics Executive Hefner and Store Director Eberhardt say that Plaintiff was "crazy," making fun of his mental health. *See* Certification of Kristen Wise attached hereto as "Exhibit A" at ¶ 17.

22. When Plaintiff returned from leave in or around July of 2017, he received an extremely harsh reception from Logistics Executive Hefner and Store Director Eberhardt.

23. For example, on Plaintiff's first day back from leave, Logistics Executive Hefner brought him into Store Director Eberhardt's office and told him "they had lost confidence" in him and that he had to prove himself.

24. During the same meeting, Logistics Executive Hefner told Plaintiff that if he took any other leave of absences to treat his anxiety, he would be "replaced."

4

25. Plaintiff was also surprised to learn that multiple employees, including Logistics Executive Hefner and Store Director Eberhardt, knew that he had been seeking mental health treatment, among other private details.

26. Store Director Eberhardt, ultimately Plaintiff's direct supervisor, and the chief participant in the decision to terminate Plaintiff, told Plaintiff directly on a series of occasions from 2017 onward that he would be "replaced" if he missed time for depression and anxiety again.

27. Logistics Executive Hefner and Store Director Eberhardt would frequently gang-up on Plaintiff and tell him things like "you should go to the mental institution," a cruel reference to his depression and anxiety.

28. In other instances, Logistics Executive Hefner would tell Plaintiff "you need to take your meds."

29. Logistics Executive Hefner and Store Director Eberhardt would also remark that Plaintiff was "taking crazy pills" and that he could "go crazy again."

30. When someone would bring up Plaintiff's name, Logistics Executive Hefner and Store Director Eberhardt would say "he is still crazy" and they would openly discuss his mental health history. *Id.* at ¶19.

31. On July 11, 2017, a day Kristen Wise was going to be promoted, Logistics Executive Hefner and Store Director Eberhardt told her that they were looking to "get rid of [Plaintiff] because he wasn't reliable due to his mental state." *Id.* at ¶22.

32. In fact, from when Plaintiff returned from his medical leave in or around July of 2017 to the days leading up to his FMLA leave starting in or around August of 2020, Plaintiff was weekly subjected to various insults from Logistics Executive Hefner and Store Director Eberhardt which related directly to his disabilities, including but not limited to "you need to take

your meds," you will be "replaced" if you take another leave for your mental health, and "you should go to the mental institution."

33. It seemed that whenever Plaintiff appeared stressed at work, Logistics Executive Hefner would tell him condescendingly, "You need to take your meds."

34. Other times, Logistics Executive Hefner and Store Director Eberhardt told Plaintiff that he had gone "to the crazy house," which was about his 2017 leave of absence.

35. In another incident, in the years after Plaintiff's 2017 medical leave, Logistics Executive Hefner told Plaintiff to "suck it up" when he complained about his anxiety, claiming his "medical condition shouldn't affect your job."

36. Often times, this remark would be said in front Plaintiff's colleagues, which was embarrassing and especially hurtful.

37. Some of Plaintiff's colleagues would approach him during the work day and say that "[Logistics Executive Hefner and Store Director Eberhardt] wanted to replace" him, even years before Plaintiff was ultimately terminated.

**Plaintiff's Transparently Pretextual Termination**

38. In or around early to mid-2019, Plaintiff was informed by Store Director Eberhardt that he was going to have to start closing the store.

39. Explicitly and repeatedly, Plaintiff told Store Director Eberhardt that he could not close the store, asking for another employee to handle the task, because of his depression and anxiety, which would flare up when given this stressful task. This could make him forgetful.

40. In fact, other employees of Target, including Kristen Wise, were aware that Plaintiff had made this request for a reasonable accommodation.

41. Unfortunately, not only did Store Director Eberhardt reject this reasonable request—a direct violation of the ADA—it was his specific plan to have Plaintiff close the store

so that he would have an excuse to terminate his employment—something he disclosed to Ms. Wise directly. *Id. at ¶¶* 27 and 47.

42. Plaintiff went to Human Resources Executive, Nick Tartarian, and pointedly asked for another role because of his disability, citing his anxiety, which can make him forgetful.

43. Plaintiff later went to Human Resources Executive, Shane Staterskhy, Mr. Tartaian's successor, and likewise told him that he could not close the store due to his anxiety, asking for another assignment.

44. Mr. Tartarian and his successor, Mr. Staterskhy, did not take any steps to accommodate Plaintiff.

45. Further, at various times, Plaintiff went to Mr. Tartarian and Mr. Staterskhy about the discrimination he was enduring at the hands of Logistics Executive Hefner and Store Director Eberhardt, but they declined to take any action.

46. Plaintiff made these complaints to Mr. Tartarian before he left in or around mid-2019 and multiple times to Mr. Staterskhy through the spring and summer of 2020.

47. In the spring of 2020, Plaintiff also told Logistics Executive Hefner to "stop" calling him "crazy" and "you're taking crazy pills" telling him not to "minimize my anxiety," saying such remarks are "offensive."

48. Plaintiff had expressed this to Logistics Executive Hefner multiple times before.

49. Moreover, Kristen Wise heard Plaintiff tell Logistics Executive Hefner and Store Director Eberhardt that he was worried about his duty of closing the store because his anxiety and medication would make him forgetful and he requested that he not have to close the store. *Id*. at ¶¶ 32-37.

50. Even after Plaintiff was assigned the tasks of closing the store, in or around May/June 2019, he made direct pleas to Store Director Eberhardt to not close the store because of his disabilities/serious health conditions as late as the spring and summer of 2020.

51. Again, these requests were ignored, as Store Director Eberhardt put Plaintiff in this position so that he could be terminated, a plan which was directly related to Kristen Wise. *Id*. at ¶¶ 27 and 47.

52. Although the reason proffered for Plaintiff's termination was that he locked someone in the store on two (2) separate instances within a year after no written discipline for more than twenty (20) years, this was just an attempt to conceal Store Director Ebehardt's illegal motivations.

53. Apart from that Store Director Eberhardt declared he wanted to force Plaintiff to close the store so he could terminate his employment, telling Kristen Wise as much, and that he denied Plaintiff's requests for a reasonable accommodation—to not close the store—Plaintiff should not have been disciplined and certainly not terminated for locking someone in the store, if Store Director Eberhardt treated Plaintiff like his non-disabled colleagues.

54. For example, scores of other employees without disabilities, including Kristen Wise, have locked team members/shoppers in the store and were not even written up by Store Director Eberhardt.

55. In addition to Kristen Wise, this includes Joseph Ceriello, Juliet Persody, Nicholas Tartarian, and Jessica Camacho—all these individuals were under Store Director Ebehardt's authority and he was aware of each incident.

56. Other employees have also left thousands of dollars unattended, without any repercussions, let alone written discipline.

57. This includes Melissa Lash, the Closing Executive Team Lead, who left the cash office unlocked in 2020, a fact of which Store Director Eberhardt was aware. *Id*. at ¶¶ 60-65.

58. Ms. Lash, upon information and belief, never disclosed any disabilities and/or took a medical leave of which Store Director Eberhardt was aware.

59. In or around early August of 2020, Plaintiff specifically requested FMLA to treat his disabilities, calling the Team Member Service Center.

60. This was after Plaintiff sought to take FMLA leave from Shane Staterskhy, telling him it was for his depression, though Mr. Staterskhy said he was taking vacation and did not have time to handle it.

61. To treat his disabilities/serious health conditions, Plaintiff ultimately took an FMLA-approved leave from in or around early to mid-August 2020 to mid-December 2020.

62. While on leave, in or around November 2020, Plaintiff had a call with Logistics Executive Hefner, who told Plaintiff "Chris and I lost faith in you" after his medical leave in 2017.

63. When Plaintiff sought to return to work, on or about December 17, 2020, his employment was terminated by Store Director Eberhardt, mere days after the conclusion of his leave.

64. During the termination meeting, Plaintiff specifically reminded Store Director Eberhardt that he had asked repeatedly not to close the store because of his disabilities/medication, which could make him forgetful.

65. In response, Store Director Eberhardt said "no one put a gun to your head" to make you close, ignoring that he intentionally denied Plaintiff's various requests for an accommodation and had planned for years to terminate him due to his disabilities and requests for time-off. *Id*. at ¶¶ 22, 27, 70.

## COUNT I
## Violations of the Americans with Disabilities Act ("ADA," as amended)
### ([1] Discrimination; [2] Failure to Accommodate; [3] Retaliation; and [4] Hostile Work Environment)

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. Plaintiff properly exhausted his administrative remedies before proceeding in this Court for violations of the ADA by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant Complaint within 90 days of receiving a notice of case closure and/or right-to-sue letter.

68. Plaintiff was terminated from Defendant because of: (1) his known health conditions; (2) his perceived health conditions; and/or (3) due to his record of impairment.

69. Plaintiff was also terminated in retaliation for requesting medical accommodations from Defendant and/or for opposing the discriminatory treatment in discussions with his management of Defendant.

70. Plaintiff made clear requests for medical accommodations (not close the store) but was refused any interactive process from Defendant (or reasonable consideration of his requests).

71. Plaintiff was subjected to an exceedingly hostile work environment during the final years of his employment, one punctuated by countless discriminatory remarks.

72. These actions as aforesaid constitute unlawful discrimination, retaliation, hostile work environment, and failure to accommodate under the ADA.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
### (Interference & Retaliation)

73. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

5. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

6. Plaintiff had multiple FMLA-qualifying conditions.

7. Plaintiff had at least 1,250 hours of service with the Defendant during his last full year of employment.

8. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

9. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on an intermittent basis.

10. Plaintiff took FMLA qualifying leave in the final months of his employment and returned to be informed his employment was illegally terminated.

11. Defendant committed interference and retaliation violations of the FMLA by terminating Plaintiff: (1) for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2)) dissuading Plaintiff and/or other employees from utilizing FMLA leave; and (3) preventing him from taking further FMLA-qualifying leave in the future.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

    C.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

    D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

    E.    Plaintiff demands a jury trial as set forth in the Caption of this Complaint.

Respectfully submitted,

By: *Mark T. Sottile*
Mark T. Sottile, Esq.
Attorney I.D. No. 312555
mtsottile@burnswhite.com
Jeffrey S. Adler, Esq.
Identification No.: 34140
jsadler@burnswhite.com
100 Four Falls, Suite 515
1001 Conshohocken State Road
West Conshohocken, PA 19428
Phone: 484-567-5700

Dated: August 27, 2021